The opinion of the court was delivered by
Tirghman, C J.
This is an a'ction brought by Rostain, the plaintiff below, against Allen and Grant, the plaintiffs in error, to recover damages for the loss of the plaintiff^ goods, shipped at Pittsburg, to be carried in a boat freighted by the defendants, to Nashville, in the state of Tennessee. The boat sunk in the Monongahela river, off the city of Pittsburg, soon after the goods were laden, in consequence of which, they were greatly damaged. The declaration contains two counts; one in which the defendants are charged as common carriers; the other, on their special assumption. The plaintiff obtained a verdict; but the counsel for the defendants took several exceptions, on points of evidence, and to the charge of the court.
The first exception was to the admission of the evidence, c( that Grant had subscribed in the name of Allen and Grant, for fifty shares in the Pittsburg Navigation and Insurance Company.” In order to recover, it was necessary for the plaintiff to prove, in the first place, that Allen and Grant were partners. The defendants confessed a partnership in the commission business, but denied that it extended further. The plaintiff contended, that although the partnership might, in its origin, have been limited to the commission business, yet it was afterwards extended to every kind of concern in which merchants are engaged, including the carriage of goods and merchandize, from Pittsburg, down the river Ohio. Now, this might be shown, by proving that they had transacted various kinds of business out of the line of commission merchants. A single transaction of this kind, might not have been sufficient to satisfy the jury; nevertheless, the plaintiff had a right to prove one thing at a time, and thus by adding fact to fact, a *373 mass of testimony might have been produced, sufficient to warrant an inference of general partnership. The evidence offered, was an advance of one step; because it proved one transaction by the defendants, as partners, beyond the commission line. A subscription to a Navigation and Insurance Company, is certainly not commission business. The evidence, therefore, was properly admitted.
2. The plaintiff having proved, that the defendants did business in partnership as commission merchants, and also bought and sold goods on their own account, (a general practice with the commission merchants of Pittsburg;) that they had an account opened in bank, in the name of the firm, and signed and indorsed notes in the same name, proposed to ask the following question of one of his witnesses: “Was it the general reputation,-that the defendants dealt as partners in any business or speculation, in which capital might be advantageously employed ? To this question the defendants objected, but the court permitted it to be put to the witness, who answered, “ that he could not answer the question in the affirmative.” The defendants counsel tendered an exception, which was allowed by the court. General reputation of a partnership, or of the extent of a partnership, is not evidence, except in corroboration of previous testimony. Whether a sufficient foundation had been-laid by the previous evidence in this case, it is unnecessary to decide, because, even if there had been error in admitting the question, it appears by the record, that the defendants suffered no injury from it, the witness having given no evidence of general reputation. I have never known a case circumstanced exactly like the present. Yet I think, principles have been established, upon which the'point before us may be safely rested. It is a general and well known principle, that a person shall not assign that for error, from which he has suffered no injury. The reason is uncontrovertible. The administration of justice is not promoted, by reversing a judgment for-an error by which no injury has been sustained. But, to bring this general rule to the point. If the party by whom evidence is offered, having obtained the court’s decision in his favour, think proper to waive the evidence, the judgment shall not be reversed, though the decision was erroneous. Now, what difference does it make to the adverse party, whether the evidence is waived, or no evidence given, because the witness knew nothing? In the Bank of Pennsylvania v. Leggit, 7 Serg. 8? JRawle, 2IS, a witness produced by the defendant, was rejected by the court. The plaintiff then waived his objection, and consented that the witness should be examined; but the defendant thinking that he had gained an advantage by the error of the court, refused to examine the witness, and tendered a bill of exceptions. The case having been brought before this court by writ of error, it was decided, that as it was the defendants own choice not to examine his witness, the judgment should not be reversed. The cases *374 cited by the plaintiff’s counsel, support his position, that there shall be no reversal of a judgment, where no injury has been sustained. 5 Co. 39. 2 Saund. 46. 7 Johns. 182. 13 Johns. 517. 2 Hen. & Munf. 67. 4 Serg. & Rawle, 498. 7 Serg. & Rawle, 185. But the defendant’s counsel contend, that there probably was an injury sustained in this instance, because, the jury having heard the court’s opinion, that general reputation was evidence, might have been influenced by their own knowledge, of a general reputation in Pittsburg, that the defendants were engaged in a general part- ' nership. But we must not suppose that the jury acted illegally. They were sworn to determine according to the evidence; that is, the evidence as given upon oath, in open court. Although it was once held, that a juror might determine upon facts within his own knowledge, not proved by his oath, yet that opinion has been long reprobated, in consequence of the confusion and injustice which would result from it. The parties have a right to hear the evidence, that they may have an opportunity of cross examining the witness, and contradicting him, if necessary, by other evidence. It has also been contended, on the part of the defendants, that the plaintiff had no right to have the answer of the witness inserted in the record, and consequently, this court should pay no regard to it. It is true, that our bills of exceptions, which are often drawn very inaccurately, do not usually insert the eviden.ce which has been excepted to. But on examining precedents drawn with great care, it will be found, that the most perfect form is, first to set forth the evidence which is offered, then the court’s opinion in favour of its admission; and afterwards to aver, that the evidence was given. 1 Went. 172. 6 Went. 131. To say, that the plaintiff had no right to place the answer of the witness on the record, is begging the question. I think he had the right, in order that it might appear, that the defendants had suffered no injury. And on full consideration, I am perfectly satisfied, that considering the whole record, it appears, that no evidence of general reputation was given, and therefore, the judgment should not be reversed, on this exception, whether the opinion of the court was right or wrong. If the slightest evidence had been given, the judgment must have been reversed; because, it is not for a court of error to weigh the evidence, or determine what influence it had on the verdict.
I come now to consider the exceptions to the charge of the court.
1. The first error is, that the jury were instructed, “ that a mart who contracts with another in his own name, is personally liable, though he be an agent, unless he discloses that fact at the time of the contract.” The objection is, that .the law was laid down too generally. It must be recollected, that the judge first laid down the general law of principal and agent, and then applied it to the evidence. And in order to do justice to the charge, we must take it altogether. It cannot be denied, that the general principle is *375 what the court declared it to be. The agent is personally liable, unless he gives notice that he contracts as an agent, and names his principal. That the law must be so, is self evident; because, the other party may have confidence in the agent, but no confidence in the principal; he ought, therefore, to be informed of the principal, that he may elect whether he will trust him or not. There may be cases, where the general law admits of distinction, but it does not appear that it was necessary to notice them in this charge. It cannot be expected that a judge should write a complete treatise on the law of agency. It is enough, if he instructs the jury in such a manner as not to mislead them. Bonnett, the plaintiff’s agent, swore that he contracted with Allen, as he understood, for the house of Grant and Allen, personally; that he knew them not as agents, but trusted to them, alone. If the defendants’ counsel supposed, that their case might be distinguished by any particular circumstances, they had a right to propose those circumstances hypothetically, and ask the court’s opinion of the law. And on one point they did ask it, and received an answer, which will be considered hereafter. But in the general instruction on the law of principal and agent, there certainly was no error, and therefore, the first exception has not been supported.
2. The second error'is, in charging, “ that a personal liability arose from the conversation between Bonnett and Allen." This is pretty much the same as the first. When Bonnett made the contract with Allen, there was no mention of an agency. The liability, therefore, was personal. But whether the liability was confined to Allen, or included his partner, Grant, was another question which does not fall within the scope of their objection.
3. “ The court left it to the jury, to say, from all the evidence, whether Allen had a right to bind his partner.” I confess, I do not see how the court could have done otherwise. For, whether Allen had that right, depended on facts, which the jury alone could determine. They were instructed as to the nature of partnership, and told, that a bare partnership in the commission business, would not authorize one partner to bind the other in a contract of affreightment. But whether the original partnership between the defendants as commission merchants, had been extended so far as to embrace the contract in question, or supposing it had not, whether Grant had not consented to this particular contract, were facts which the court could not decide. The evidence on both sides was summed up by the court, and the case fairly submitted to the jury.
4. “The court left it to the jury to presume the acquiescence of Grant, when there was no evidence to justify such inference.” This exception is founded on a distinction, rather hypercritical; a distinction between consent and acquiescence. Acquiescence, it is said, must be subsequent to the contract, and there was no evidence of any act, or declaration of Grant subsequent to the *376 contract, in this instance; although there was evidence, and strong evidence oí precedent consent. To judge fairly of the charge, we must attend to the judge’s expressions. “Although the particular undertaking in dispute may be unconnected with the usual line of the business of the firm, and may have been entered into by but one partner, yet if the other consented, or knowingly acquiesced, the whole firm would be answerable. And again, “If you believe it was merely an agency business, you ought to ask very strong evidence, to induce you to believe there was a power in one partner to bind the firm personally; and, if it was foreign to the nature of their partnership business, did Grant acquiesce in, or assent to the course that was pursued?” Surely the defendants have no right to complain of this part of the charge, considering the evidence which had been given. It had been proved by David Logan, that some time previous to the contract with the defendants, Grant called on him, and. said, he should have a boat to load for Nashville, and asked whether the witness had any goods for freight; Lagan then asked him, who would sign the receipt, to which Grant answered, 11 we wiV.” This looked very much like an assurance that both partners should be personally bound, and if the ■jury should so construe it, they would be authorized in inferring a consent to a contract to bind the-firm, to be made by Mien with the plaintiff. Now, whether you call it consent or acquiescence, is not material. Surely a judgment should not be reversed, on a verbal criticism of that kind.
5. The last exception, is to the opinion of the court, “ that although Latapie, an agent of the plaintiff, to whom the goods were to be consigned on their arrival at Nashville, knew that the boat which carried them, belonged to the house of Gordon and Walker, at Nashville, it could have no effect on the contract made by Bonnett with the defendants.” It is to be observed, that whatever the contract between Boiinett and the defendants was, Latapie never interfered in it. There was no evidence whatever, of his having taken any part in it. Then, how could that contract be affected by Latapie’s knowledge of the persons to whom the boat belonged ? Might not the defendants bind themselves personally, although they acted as agents for Gordon and- Walker? And if they did so bind themselves, was the contract tobo dissolved, by Latapie’s knowledge of the owners of the boat ? Bonnett and Latapie were both agents of the plaintiff; but for different purposes. Bon-Mfiii received the goods at Pittsburg, and contracted for their carriage to Nashville Latapie was the consignee, to receive, and sell them at Nashville. Latapie’s knowledge, therefore, of the owners of the boat, would have been perfectly consistent with the contract of the defendants; whereby they were personally bound for the carriage. Although I have given my opinion on this last exception, yet I must remark, that I do not consider it as being properly on the record. The judge certifies, “ that he has no recollection of having *377 given such matter in charge, but as it is in Mr. Baldwin’s notes, he is willing to adopt it, on his word; that he thinks it all correct, and very probably he may have used the language.” If the point of law had been doubtful, this court would have been bound to. send the record back, to give the Court of Common Pleas an opportunity of certifying positively whether the matter excepted to, was given in charge or not. On the whole, I perceive no error, and am of opinion that the judgment should be affirmed. '
Judgment affirmed.