Baldwin, Justice.
{Dissenting.) — The plaintiffs sue in this case as the indorsees of six promissory notes drawn by James Jacques, and indorsed by John Winship, which came to their hands, as the discounters thereof, being offered by John Winship, and the proceeds thereof placed to his credit in the bank. They were not notes indorsed to the plaintiffs in payment, or as collateral security for the payment of an antecedent debt, or the performance of any pre-existing contract. The bank are prohibited in their charter from dealing in goods, unless for the sale of such as are pledged for the payment of debts. (4 Laws U. S. 43 ; Ninth fundamental article of the charter of the bank.)
This was not then the case of goods sold by plaintiffs to defendants, as partners, on the faith of the partnership, in the course of their business. Neither is it a case of money previously lent, and a note or bill indorsed over in payment or security. The case finds, and the circuit court considered it, a case of discount, which is a purchase of the note on stipulated and' well-known terms. The purchase or discount of a note is contract wholly unconnected with the objects, uses or application of the money paid. A party who sells a bill or note, incurs no liability to the discounter, by the mere contract of discount, where he does not indorse it; nor does the discounter who pays for the discounted bill or note in other bills and notes, without indorsement, guaranty their payment. The contract is one of sale; and in the absence of fraud or misrepresentation, the rights of the parties are tested exclusively by the only contract which the nature of the case imports; of sale and purchase as of any other article in market.
Where a purchase is made or money borrowed on partnership account, an immediate debt is created ; a note or bill given or indorsed, is for pay-*56fil ment ^e existing debt; and if not *paid, the debt-remains, unless -i the bill or note has been accepted as payment. So, if the bill or note is given as collateral security. And the law is the same, whether one or all the partners do the act; there is an antecedent debt binding on all, or an indemnity to be provided ; the obligation is not impaired by giving or transferring an effectual security. But the present case is wholly different. The defendants owed no antecedent debt to the bank, for which these notes Avere transferred to them. They were neither offered nor accepted as payment or indemnity; but sold by Winship, and purchased by the bank, at their value. That value is, in my opinion, to be ascertained with reference to the names on the bill, who are the parties to the contract, and in my vieAv *365 of the law, the only parties. The bank bought from John Winship, the promise of James Jacques, guarantied by Winship, on known conditions. This distinction between passing or pledging a note in payment, and dis- ¡ counting it, has been wholly overlooked in the opinion of the circuit court ; 1 and the case seems to have been considered throughout, as governed by the same rules which apply to purchases, loans, and other partnership engagements. The case before them was a pure case of discount, which is governed by its own principles ; which, in my opinion, would have produced a different result in the cause, had they been laid down to the jury.
These principles are fully illustrated and established izi their various bearings on cases which have been adjudicated, azzd laid down in tez’ms too clear not to be understood. 15 East 10, 11 ; 2 Doug. 654, note ; 3 Ves. jr. 368 ; 10 Ibid. 204 ; 3 T. R. 757; 1 Ld. Raym. 442 ; 1 Cranch 192 ; 6 Ibid. 264; 1 W. C. C. 156, 321, 328, 399; 3 Ibid. 266 ; 9 Johns. 310 ; Burke’s Cases in Bankz’uptcy 114, 170 ; 3 Madd. 120 ; 1 Esp. N. P. 448. I do not refer to the latter case, because it ought to be any authority in this court; but because it shows that Lord Kenton, who dissented fz'om the court of king’s bench in 1790, in the case quoted from 3 T. R. 757, came to the same opinion in 1796. Neither do I rely on elementary writers who lay down the same positions ; but on the adjudged cases, which seem to me to be the safest guides to the law. “ Satius est petere fontes, quam, sectari rivulos.” 10 Co. 118.
*Resting on these authorities, I shall consider the case on the evidence, as one of discount, not of loan, purchase or any other pre- *- existing liability. As the evidence of Jacques proves that these notes were accommodation, and not notes of business ; as Mr. Harris, the discount clerk, testifies, that all the notes were discounted at Winship’s request, and the proceeds passed to his credit ; that it is easy to distinguish accommodation notes from others ; and that he considered these in suit to be of that description ; and that the bank had frequently discounted notes drawn by Winship, and indorsed by Amos Binney ; and Mr. Parker, one of the directors of the bank, testified, that when the bank discounted these notes, it was understood that Amos and John Binney were bound by them. Witness understood, that they were bound as partners in the soap and candle business, not general partnez-s. Did not know, as to John Binney, whether plaintiff considered him answerable, but that they did so consider Amos Binney ; that a number of notes of this kind were discounted, while other notes indorsed by Amos Binney were in bank; that Amos and John Binney wez-e engaged in large business as mez’chants, and witness does not know that any one ever supposed defendants to be partners, except in the manufacture of soap and candles.
I cannot do injustice to the plaintiffs, by founding my opinion on this testimony. Mr. Parker was present at the making of the contz-act of discount of these notes; he was one of the agents of the bank in making it, and a party to it, as a member of the corporation, directly interested. His evidence is the solemn admission, on oath, of a party to the contract, and ought to be taken as true. The defendants have a right to its full benefit, as explanatory of the nature, terms and circumstances under which it was made. Mz\ Harris, the discount clerk, was the appropriate agent of the bank in consummating the contract of discount, by paying to Winship the *366 proceeds of the discounted notes; and I cannot err in saying, from the record, that these were the only witnesses examined at the trial touching the discount of these notes ; the only contract, in my opinion, which the law raises between the plaintiffis and defendants. What, then, was the obligation which this contract of discount, as proved by Harris and Parker, imposed on Amos and John Binney, by the bank’s purchasing these note- % *at the request of John Winship, and paying or passing the proceeds 5 •' to his credit ?
The notes were accommodation, so understood by the plaintiffs, and discounted as such. The bank, then, knew that they were not what they pur ported to be ; they are set forth in the record, are all drawn for value received, and thus bear a falsehood on their face, known to the bank. Such notes, Mr. Harris says, are easily distinguishable from notes of business ; and the bank did not discount them as representing a purchase, a loan, or any pre-existing obligation by Jacques to pay the amount to Winship, but as the lending of his name by Jacques to Winship, to enable him to raise money by the sale of the notes. There was in this respect no fraud on the bank. They knew they were not purchasing notes given and indorsed in the usual course of business. They did not come to their hands as innocent indorsers, taking them to be what they imported to be, for value received. The bank are purchasers, it is true, for a valuable consideration ; but not innocent, or without notice. They took the notes, with a known taint on their very face, which can only be effaced by some subsequent indorsee or holder, who takes them in the course of business, without notice, and takes them as between the payer and payee, as having been given for value received. But the plaintiffs have become the indorsees by discount, knowing that by the acknowledged principles of commercial law, as between the original parties in all their relations, Winship was the maker and Jacques the indorser. As between them and the bank, their relations were the same, whether the notes were of business or accommodation ; they werliable in the capacities they respectively assumed on the face of the notes. When the discounter, or the indorsee, of an accommodation note, known by him to be such, seeks to recover the amount from a person whose name does not appear on the note, he must prove that the person charged had made himself a party to the note ; had authorized its negotiation or transfer, previously, or afterwards assented to, ratified or adopted the indorsement as his own. Had there been no previous connection between the Binneys and Winship, and the Binneys had procured the discount from the bank, without their indorsement, they would be no more answerable to the bank, than by 1 receiving payment of a check. *On the face of these notes, the Binneys are strangers to the bank. The contract of discount which they made with Winship, does not, per se, create one with the Binneys. Being accommodation notes, they were discounted as such ; that is, as the notes of Winship, indorsed by Jacques ; for such is the acknowledged character of such notes in the commercial world. The line separating business from accommodation paper, is clearly defined by law and usage. There is the same difference between the indorser of a note known not to be what it purports to be, and one which represents a real debt from the maker to the payee, as between the purchasers of real estate with or without notice of an incumbrance, or the defect of title ; so far as respects their standing in *367 courts of justice, in relation to third persons, not parties to the contract. Those who purchase in good faith, without notice of fraud, and pay their money, confiding in the face of the transaction, ignorant of anything which can affect its legal or equitable character, are entitled to the protection of all courts as their most favored parties.
A peculiar sanctity is thrown round the obligation of negotiable paper, actually negotiated in the usual course of business, and in the hands of an innocent holder, for a valuable consideration, without notice. Every presumption which the law can raise, is in favor of such a holder, whether he receives the note in payment, or by discount. It becomes divested of this peculiar obligation, when the paper, in its original concoction or negotiation, becomes divested of these attributes, and remains in the hands of a holder who has a knowledge of all the circumstances attending both. I know of no decision of any court, no principle of law, nor usage of merchants, which confounds the distinction between these two kinds of paper in the hands of indorsees, with or without notice ; it is too well established to require support from argument or • authority. The same distinction exists in paper negotiated after it is due, or partnership notes given for the private debt of a partner. Notice is the distinguishing criterion in all these cases, and settles the question as to the bui’den of proof. So I find the law laid down by the supreme court of Massachusetts, in the ease of the Manufacturers' & Mechanics’ Bank v. John Winship, 5 Pick. 11. The sui]. was brought on an *accommodation note drawn by John Winship, to -Jacques or order, indorsed by him and discounted by the plaintiffs in the usual *- °‘¿ course of banking business. The chief justice charged the jury, that the burden of proof was on the plaintiffs ; and that if no proof was given by them that the money was raised for the business of the firm, at the manufactory, the jury should find the fact for the defendants. In giving judgment for the defendants, the court affirmed the charge of the chief justice as to the burden of proving the note to have been given on partnership account being on the bank ; that no recovery could be had against the partners, so long as it remained doubtful whether they have or have not made the contract declared upon ; that from the fact of the note being found to be an accommodation one between Winship and Jacques, it would seem more likely that it related to the private concerns of Winship than to those of the partners ; at any rate, the uncertainty resting on the face of the note would still continue. The plaintiffs knew, or might have known, that Winship was openly engaged in commercial speculations, which were wholly unconnected with the business of the manufactory; and that his signature might relate to one concern as well as another. If, therefore, they meant that the note should be enforced against the partnership, they should have ascertained that the signature of Winship was intended for the signature of the fii-m. But they made no such inquiry, and it does not appear that Winship or Jacques ever made any representation to that effect. And although it appears, that the plaintiffs supposed the Binneys would be answerable, because they were partners with Winship in the manufactory, yet they gave no intimation whatever to the parties to the note to be discounted, that such was their understanding of the contract.
There are few courts whose opinions may be more safely confided in, as to the rules of the common law; there is none whose authority I feel more *368 bound to respect, as to the common law of Massachusetts, than its highest judicial tribunal. The law of the state where a contract is made and carried into effect, seems to me to be the law which must control its obligation ; and until evidence of the common law of that state more imposing than the „ solemn decision of its supreme court *is furnished me, I feel it my ' J duty to respect and adopt it: believing that in doing so, I violate no principle which has ever been sanctioned by this court. In some particulars, the evidence in the cause referred to was more favorable to the bank than in this. The note was discounted at the bank, on the belief that the Binneys were liable as partners of the manufactory at Charlestown only. This was found by the jury; but it was not found, and there appears to have been no evidence, that the bank or its officers knew the note to be an accommodation one. The judgment of the court was on the fact being so found, not on its being known to the plaintiffs.
In this case, the notice is brought home to the plaintiffs, by the evidence of their discount clerk. Mi-. Parker, the director, does not say the note was discounted, on the belief that the Binneys were liable as partners; all he says on that subject is, when the bank discounted these notes, it was understood, the Binneys were bound by them. He immediately corrects this, and says, he does not know, as to John Binney, whether plaintiffs considered him answerable ; but they so considered Amos Binney. This is certainly very lame evidence of the notes being discounted on the credit of both Amos and John Binney; and much weaker than the fact found by the jury in the other case. The bank had notice of the course of business between Winship and Amos Binney, by his indorsing Winship’s notes, and the bank discounting them. The Binneys were in good credit; and being reputed wealthy, it was not to be presumed, they would borrow credit from Jacques. These circumstances ought to have put the bank on inquiry, as Binney was a customer residing in the place. The court placed no reliance on these circumstances, or on the fact of the notes being discounted with the knowledge that they were notes of accommodation.
Nor did the court, in my opinion, correctly define the difference between a dormant and an open partnership. It seems to me to be this : where the names of the partners do or do not appear in their accounts, their advertisements or their paper; where the business is carried on in the name of all, it is open ; but if any are kept back, it is dormant; that the knowledge which the public may have is not the test, when it is acquired from the acts or ,1: h declarations of the acting *avowed partners : it may enable them to reach the dormant one, if the transaction is one in which he had an interest, but does not alter its nature. The partnership remains dormant as to all, whose names do not appear on its transactions. The dormant, the sleeping, inactive partner may be known by reputation, or the declaration of hi,s copartner, but these do not make him an avowed or active one, without the avowal and pledge of his name or paper. If credit is given to the other names, on the faith of such reputation or representation, the persons so trusting must do it at the risk of suffering, if their information is not true. The declarations of one of a firm are not evidence of another person’s being a partner, in any particular transaction, unless a previous connection is established, which gives him authority to bind by his acknowledgment, or proof given of subsequent assent: reputation is not, per se, evidence, *369 unless brought home to the party charged; then his silence may be deemed acquiescence or assent. 11 Serg. & Rawle 362 ; 2 W. C. C. 388, 390; 14 Johns. 215; 3 Caines 92; 10 East 264; 5 Pick. 415, 417; 1 Gallis. 685, 638, 640.
The language of some of the cases is, that it is rather on the ground of agency, than partnership resulting from the community of interest in the subject-matter of the contract. The principle which makes a dormant partner liable is this : having an interest in the profits which are a part of the fund to which a creditor looks for payment, he shall be bound. 2 W. Bl. 1000 ; 2 H. Bl. 247 ; 4 East 144; 16 Johns. 40; 2 Nott & McCord 427, 429 ; 1 H. Bl. 45, &c. As his name is not pledged, his liability arises only from his interest (16 East 174-5) ; and the burden of proving such interest is on the party suing. The language of the court, in 2 Nott & McCord 429, is very emphatic : “ To charge defendant as partner, one of two things is necessary ; either he must have permitted his name to be used as one of the firm, thereby holding it out as a security to the community ; or he must have participated in the profits.” As the Binneys never pledged their names on these notes, they .were not discounted on their faith. There is then wanting in this case that fact on which the power of one partner to bind the firm by negotiable paper is created, the use of the names. *The plaintiff who seeks to make those parties to a note, whose names do not give it currency or credit, must make them parties, by *- ‘ affirmative proof of an interest in profits, previous authority, or subsequent recognition. It is true, that when a dormant partner is discovered, he is liable ; but then he must be shown to be one, by an interest in the subject-matter of the note. Till this is brought home to him, he is no party to it. I know of no authority for saying, that the mere existence of a partnership, composed of names not avowed or pledged to the public, makes them, when discovered, liable for any other than contracts in which they have an interest ; one who suffers his name to be used on paper, is liable, as a partner, though there is in fact no existing partnership ; but the man who does not suffer his name to be used or pledged, is bound only by virtue of his interest.
This furnishes, I apprehend, the true distinction between dormant and open partnerships, and that it does not depend on the knowledge which the public may have, or the representation made by the contracting partner, when he is giving or negotiating a note. The reason which makes a note drawn or indorsed by one partnei-, in the joint name, though for his own use, binding on the firm, in the hands of an innocent holder, is, because it has been taken on the faith of his name. 3 Kent’s Com. 18. The case of Van Reimsdyk v. Kane, shows the importance attached to the names of the partners appearing on a bill. One partner was authorized by the others to take up money on the credit of the partnership concern, and draw bills therefor, on a house at A. He took up money, drew a bill directing it to be charged on the account of all the partners ; but it was signed by himself alone : the court held, that the representative of a deceased partner was liable in equity to a payee, who trusted his money on the faith of the joint' credit; but expressed themselves with great doubt and caution, as to the liability of the partners at law. 2 Gallis. 30.
It seems to me, that the circumstance which would excite a doubt in *370 that case would remove it in this. But when all the names are not used, the reason and the law cease together. Where the liability attaches to the name, proof of the signature is enough ; where it depends on the mere participation of the *profits, that must be proved by the holder : as he claims to hold persons bound whose names were not held out on the paper as inducements to take it, he must show that the law has placed their names upon it. In proving a partnership assignment, it must appeal-, that the party making it had a right to sign the name of the firm, and that his act is the act of all the partners. 5 Cranch 300. A party claiming the money due on a note, indorsed to him in the name of the firm, must show the indorsement to be made in the name of the firm, by a person duly authorized. 7 Wheat. 069. The case of Leroy v. Johnson, in this court, 2 Pet. 186, was this : Hoffman and Johnson were partners, under the firm of Hoffman & Johnson ; so advertised in the papers, so publicly known, and so carried on, under articles of partnership. Hoffman drew a bill on London, in Alexandria, in his own name, which the plaintiff, residing in New York, purchased from Hoffman ; the bill was drawn to raise money to pay a note of the firm, and sent to New York, by Johnson, for the purpose of selling it. Not succeeding, Hoffman went on, and, assisted by letters of recommendation from merchants of Baltimore, negotiated the bill, and with the proceeds paid a partnership note. The circuit court of the district were asked to instruct the jury: 1. That on the evidence of pax-tnership and the application of the px-oceeds of the bill to partnership purposes ; 2. That if the bill was drawn with reference to the business of the concern ; 3. That if the name of Jacob Hoffman was sometimes used in relation to the business of the firm, that the bill was drawn in his name, and so negotiated for the firm, and to pay their debts : that the plaintiff was entitled to recover. These instructions were refused, and judgment rendered for the defendant, which was affirmed ; this court holding it indispensable for the plaintiff to px-ove, that the name of Hoffman was used in the transaction, as the name of the firm, and that the parties so traded and cari-ied on their business ; that the jury would be well warranted from the facts of the case in believing, that Hoffman dealt in his individual name, and on his sole responsibility, without even an allusion to the pax-tnership ; though the bill was drawn for partnership pux-poses, with the knowledge of Johnson, and * '"71 sent t0 New York for sale, *and the proceeds applied in good ‘ ' faith. The attention of the court was not drawn to the distinction between notes discounted, and those received in payment; nor was the bill in question an accomxnodation one. There was no fraud in the transaction, as between the partners. It was drawn, negotiated, and the proceeds applied, with the consent of both, and the aid of lettex-s of recommendation. It came to the hands of the holdex-, by fair pxxrchase in market, in the usual and x-egular way of business ; yet Johnson was not bound: his name was not on the bill; the plaintiff did not prove it to be the xiame of the firm, in the particular transaction, though Hoffman’s name was sometimes used alone in partnership transactions.
If, in addition to these defects in the plaintiff’s case, it had appeared, that the bill drawn in the name of Hoffman had been one of accommodation, known to Leroy to be so, and purchased as such, without the knowledge of Johnson of its having been dx-awn or negotiated, or the application of its proceeds to *371 partnership purposes, and with a knowledge by Mr. Leroy, derived from his having been in the frequent habit of discounting bills drawn by one and discounted by the other, understanding there was a special partnership between them ; it is not presuming too much, to think, that this court would have deemed these circumstances strong presumptive proof and reasonable notice of their accustomed mode of raising money for partnership purposes, by discount; and that a known accommodation note, made by a stranger, and indorsed by Hoffman alone, was not a partnership note, when offered by him for discount, without the name of Johnson. It would seem to me, to furnish the very case which this court, in delivering their opinion in Leroy v. Johnson, make a proviso of the liability of the members of a firm, whose names appear on a bill negotiated, and in the hands of an indorsee. The court say, a bill drawn or accepted by a firm, by their usual name and style, is presumed to be on their joint account and authority, and that third persons are not bound to inquire whether it was so done or not, “ unless the contrary be shown, and that the persons with whom the partner deals had notice, or reason to believe, that the former was acting on his separate account.” This restriction to the liability of partners, whose names *appear on a joint note, in the hands of an indorsee, to whom the faith of a partnership is publicly pledged, seems to me conclusive in L a case circumstanced like this ; where the agents, who effect the discount of the note in question for the bank, prove distinctly their own knowledge of the nature, extent and objects of the partnership, the mode adopted to raise funds for the firm in the same bank, and of these notes being for the accommodation of Winship, and his receiving the proceeds.
Under the circumstances of this case, I cannot consider the plaintiffs as innocent indorsees of the negotiable paper of a firm, actually negotiated by them on its pledged credit, without notice or reason to believe that Winship was acting on his separate accouut. The testimony of Harris is conclusive on my mind, to prove, that the officers of the bank perfectly understood the nature of the transaction ; that the notes were not discounted on any representation made by Winship, or on the belief that they were the notes of the firm. The bank may have thought the Binneys, or one of them, liable ; but according to the testimony of Parker, could not have believed the indorsement to represent a regular and authorized partnership transaction. The statement of Mr. Parker was, at first, that they understood the Binneys were liable; but he afterwards corrected himself, and said, he did not know, as to John Binney, whether the plaintiffs considered him so answerable, but that they so considered Amos Binney. They evidently thought Amos liable, because he had been in the habit of indorsing Winship’s notes, but could by no possibility have believed Amos and John liable as partners, under the signature of Winship, when one of the directors who made the discount could not say that the bank ever considered John Binney to be liable.
Finding, on a careful examination of the charge of the circuit court, that none of the restrictions and qualifications of the liability of a dormant partner, whose name does not appear in an indorsement of an accommodation note, discounted under known circumstances of suspicion, have been laid down or explained to the jury ; I am constrained to say, that it is erroneous, and that the judgment ought to be reversed.. I cannot, on a subject so important as this, silently dissent from the opinion of the court, when my *372 judgment has been made up on *wkat seems to me the best established principles of commercial law ; nor can I consent to overrule a decision of the supreme court of the state where this contract was made, executed and enforced, without the highest possible evidence of their having been mistaken in their judicial exposition of the common law.
This cause came on to be heard, on the transcript of the record from the circuit court of the United States for the district of Massachusetts, and was argued by counsel: On consideration whereof, it is considered, ordered and adjudged by this court, that the judgment of the said circuit court in this cause be and the same is hereby affirmed, with costs and damages, at the rate of six per centum per annum.