## HALLIDAY *vs.* McDOUGALL.

In an action against *three defendants* sought to be charged as *partners* where only one is brought into court, and the others are returned upon the *capias* issued in the cause *not found*, it is sufficient to entitle the plaintiff to recover, that he show that the *defendant brought in is a member of the firm* upon whose contract the action is founded; it is not necessary in *such case* to prove that the other defendants were members of the firm.

A bill of exchange drawn in *one* of the states of the union, payable in *another*, is regarded as a *foreign bill*, and a notarial protest is *prima facie* evidence of its contents.*

ERROR from the supreme court. *Halliday* sued *J. D. Ansley, J. McDougall* and *W. J. Wightman*, in the superi-

---

*In this case the judgment of the supreme court is *reversed*. That court held, that the plaintiff was bound to establish a *joint liability* of all the defendants; and as the proof to show the liability of *one* of the defendants

or court of the city of New-York, as the *drawers* of two bills of exchange of $750 each, drawn in the city of New-York, in the name of *Ansley, McDougall & Co.*, on a firm transacting business in *Charleston*, under the name of *J. D. Ansley & Co.*, both bearing date 26th November, 1825, payable to the order of the plaintiff, one in 30, and the other in 40 days after sight. The bills were *accepted* but protested for *non-payment.* McDougall alone was brought into court, the sheriff having returned the other defendants *not found* on the *capias ad respondendum*, issued in the cause. The bills were *drawn* by *Ansley*, in the name of *Ansley, McDougall & Co.*, and were accepted by *Wightman* in the name of *J. D. Ansley & Co.* They were protested by a *notary public* at Charleston, under his notarial seal, he certifying in the protests that he had made demand of payment, that the same had been refused, and that he had given due notice of non-payment to the drawers and acceptors. The plaintiff proved that *Ansley* and *Wightman* were co-partners in trade, transacting business under the name of *J. D. Ansley & Co.*, that in July 1825, *Ansley* being in *England*, entered into a written agreement with *McDougall* in these words : " We engage to allow Mr. McDougall one-fourth the profits of our trade by his becoming an active partner, or give him the option of having his

who was returned *not found*, rested wholly upon *general reputation*, and the judge at the trial, although requested, refused to charge the jury that *reputation alone was not sufficient* to establish the fact of partnership as to him, the judgment of the court below, which was rendered against all the defendants, was *reversed*, the supreme court HOLDING *that general reputation of a partnership standing alone and not offered in corroboration of facts and circumstances, is inadmissible in evidence to prove a partnership ; and expressing a doubt whether it be even admissible as auxiliary proof.* The *Chancellor*, in delivering his opinion in the *court for the correction of errors*, *holds* that the question did not necessarily arise in the case, but had it arisen he expresses his *full concurrence in the abstract question of law*, upon which the decision of the supreme court was based.

*Senator* EDWARDS, who also delivered an opinion in the *court for the correction of errors*, holds that evidence of *general reputation of partnership* is competent to be received, and when *corroborated* by facts and circumstances, proper to be submitted to the consideration of the jury.

expenses paid out and home. Should Mr. McDougall not be satisfied with his proportion of the profits arising out of the said concern, we shall allow him a salary of $1200 per annum;" to which agreement, Ansley affixed the name of his firm, viz. *John D. Ansley & Co.* In pursuance of this agreement, McDougall came to this country. He arrived in New-Yord on the *eight day of November*, 1825. Previous to his arrival, *Ansley*, had put up a sign at a place of business in New-York, with the names upon it of *Ansley, McDougull & Co.*, and it was generally reported *previous* to the arrival of McDougall, that he had become a partner with Ansley. He frequented the place of business, over the door of which was the sign of *Ansley, McDougall & Co.*, and transacted business as a member of that firm. *On the fifth day of December*, 1825, he sailed for *Charleston*, leaving up the *sign* of *Ansley, McDougall & Co.* In relation to *Wightman* being a member of the firm of *Ansley, McDougall & Co.*, there was no evidence whatever, other than reputation. When the plaintiff rested, the defendant's counsel moved for a nonsuit, on the ground that there was no evidence that *Wightman* was a member of the firm of *Ansley, McDougall & Co.* The motion for a nonsuit was denied. When the proofs were closed, the defendant's counsel renewed the objection, and requested the judge to charge the jury that the plaintiff could not recover, unless they were satisfied that he had shown that *Wightman* was a partner in the firm of *Ansley, McDougall & Co.*, and *that general reputation was not alone sufficient to establish such fact.* On the *subject of general reputation*, all that was said in the charge to the jury was the following: " If the jury should not be satisfied that *McDougall* elected to become a partner, then they were to find upon the evidence whether he held himself out, or knowingly suffered himself to be held out by others, as a partner in such a manner as to induce the world to believe he was such a partner. If he did so, then he was bound as a partner by the acts of the firm to all persons, except such as might know that in fact he was not a partner. The jury, however, in considering the evidence on this head, must carefully lay out of view

the acts or declarations of *Ansley*, or of any other person, before the arrival of McDougall in the country, *and also the reputation on the subject of the partnership prevailing before that time.*" The judge further charged the jury, that before the plaintiff could recover, they must be satisfied that *all the defendants were partners* in the firm of *Ansley, McDougall & Co.* The jury found for the plaintiff, on which verdict judgment was entered. The *defendant* having excepted to various decisions made in the progress of the trial and to the charge of the judge, sued out a writ of error removing the record into the *supreme court,* where the judgment of the court below was *reversed.* See the case more fully stated, and the opinion of the supreme court, delivered by Justice COWEN, 20 *Wendell* 81, *et seq.* The *plaintiff* thereupon removed the record into this court.

*J. W. Gerard,* for the plaintiff, insisted that *McDougall* being the only defendant brought in upon the *capias* sued out by the plaintiff, had no right to object to the want or competency of the proof adduced to show *Wightman* a partner, and therefore was not entitled to ask the judge to instruct the jury that general reputation was not sufficient to charge him. He contended that *less evidence* was required from plaintiffs to prove a *partnership* in defendants, than what was necessary to prove themselves partners, they always having it in their power to produce the articles of their copartnership. 3 *Starkie's Ev.* 1070. So he insisted that less evidence was necessary to prove a defendant *not served with process,* a member of a partnership, than must be shown to prove a defendant who was brought into court a member, because the latter being benefitted by having a co-defendant, upon whom he may call for contribution; and the former not being concluded by the judgment from showing that he was not a partner either in a suit by the plaintiff upon the judgment, or by his co-defendant for contribution. *Sangster v. Mazaredo,* 1 *Starkie,* 161. 2 *R. S.* 377, § 2. If, however, full proof was necessary, he then insisted that *general reputation* was *prima facie* evidence to go to a jury as proof of partnership; that such

was the general understanding of the profession and the practice of our courts. In support of this proposition he cited *Gowan* v. *Jackson*, 20 *Johns. R.* 176, and *McPherson* v. *Rathbone*, 11 *Wendell*, 98. See also 4 *Cowen*, 282. Besides, here were corroborating facts and circumstances to show that *Wightman* was a member of the firm in whose name the bills were drawn.

*D. D. Field*, for the defendant, insisted that there is not a case to be found, in which, in *England*, proof of *general reputation* was received to establish a partnership, and none of the elementary works there intimate that for such purpose such evidence can be resorted to. *Cary on Partnership*, 136. *Collyer on Partnership*, 449. *Gow on Partnership*, 208, 233. In other states of this union, such evidence has been held insufficient. 2 *Harris & Johns*. 296. 5 *Gill & Johns*. 383. 11 *Conn. R.* 92, and 16 *Pickering*, 412. In this state, in the case of *Whitney and Bancroft* v. *Sterling and others*, 14 *Johns*. 215, the court in speaking of the proof required to charge a defendant as a partner say, " whether *general reputation* ought to be sufficient is questionable; but such testimony is competent, and there are several circumstances in the case which go very much in corroboration of it. In *Gowan* v. *Jackson*, 20 *Johns. R.* 176, the witness who testified to the general reputation stated that he had done a good deal of business for the defendant, and had always understood that he was a member of the firm. In *McPherson* v. *Rathbone*, 11 *Wendell*, 96, Chief Justice Savage did say that it was undoubtedly competent to have proved the partnership of all the defendants by *general reputation*, but it was wholly unnecessary to the determination of that case that such a rule should have been laid down, as there the decision was founded upon the assumption that the articles of copartnership were sufficiently proved. In 7 *Cowen*, 234, the court held that it could not be shewn by *general reputation*, who were the directors of a corporation. The judge, therefore, on the trial of the cause, should have instructed the jury, as desired, that *general reputation* alone was not sufficient to prove

Halliday v. McDougall.

that *Wightman* was a member of the firm. It is the duty of a court to instruct a jury upon a point material to the issue when requested to do so. 3 *Cranch*, 298. 11 *Wheaton*, 74. 7 *Peters*, 607. 5 *Cowen*, 243. 8 *Conn. R.* 319. 6 *Munro*, 136. If the judge in this case had thought proper to qualify his instructions by saying that evidence of *general reputation* was competent, and that in connection with other facts and circumstances, it would authorize a verdict, he might have done so, but he could not wholly refrain from complying with the request. He was bound to speak. Had, however, such a charge been given, it would still have been insisted on the part of the defendant that it was erroneous, for *general reputation* is but *hearsay* evidence and therefore inadmissible.

After advisement the following opinions were delivered :

By the CHANCELLOR. I have no doubt of the correctness of the decision of the supreme court, that general reputation alone is not sufficient to establish a copartnership, so as to charge the supposed members of the firm with the payment of its debts ; and if the decission of this case turned upon that question, I should have no difficulty in affirming the judgment of that court, by which the judgment of the superior court of the city of New-York, in favor of the present plaintiff in error, was reversed. Proof of general reputation, which is sometimes received in such cases in connection with other evidence, certainly is no proof of the fact of the copartnership as against the reputed members of the firm who reside at a distance, and where the jury cannot fairly infer from the other circumstances in the case that those persons actually knew they were held out to the world as such copartners. And if the object in this case had been to render Wightman, who lived at Charleston, liable to the plaintiff for the debt contracted by the New-York firm, this evidence of general reputation *at New-York*, of which he could not be presumed to know any thing, the judge who tried the cause, would unquestionably have told the jury to lay it entirely out of view in considering the question of his liability, in the same manner as *he told them*

to lay out of view the reputation prevailing there *before* McDougall arrived, in determining the question' whether he had made himself liable for the debts of the firm by suffering himself to be held out to the world as a partner.

Where an action is brought against several persons as *joint debtors,* all of whom appear and deny their joint indebtedness, the plaintiff is obliged to make out by legal evidence against each, not only that he is personally liable for the debt, but also that he is jointly liable with all his co-defendants; but when part of the defendants admit their individual and joint liability, either by their pleadings or otherwise, or where they are outlawed or proceeded against as absentees by a return of the capias by the sheriff as to them not found, so that no personal judgment can be rendered in the suit against them or their individual property, the plaintiff is only obliged to produce evidence which will be sufficient as against those who appear and defend the suit, to establish their joint liability with their co-defendants. In such cases, therefore, the acts and admissions of the parties who thus appear and defend, are legal evidence as against themselves, not only of their own indebtedness but also of their joint-indebtedness with their co-defendants. Thus, in the case of *Sangster* v. *Mazaredo and others,* 1 *Stark. R.* 161, where a suit was brought against four persons as copartners and acceptors of several bills of exchange, and three of the defendants who resided in a foreign country had been proceeded against to outlawry, and the fourth who had been personally served with process appeared and defended the suit, Lord Ellenborough held that the admissions of the defendant who had appeared, that he was a copartner with the three absentees, were sufficient to entitle the plaintiff to a verdict; and as our statute, authorizing a proceeding against joint debtors upon a service of process on a part of them only, is a mere *substitute* for the English proceeding to outlawry against the absentees, and the record of the judgment, will not be evidence of a joint liability in any subsequent suit against the defendants who have not been served with process, the decision in *Sangster* v. *Mazaredo and others,* is directly ap-

plicable to the case now under consideration. Indeed, the same point was substantially decided, under our statute, by the supreme court, in the case of *Whitney* v. *Sterling and others,* 14 *Johns. R.* 215, although the legal effect of a joint judgment upon the rights of the absentee had not then been settled. The court say, in that case : " Hunter and Sterling, the defendants who had appeared, cannot complain, because the testimony fully establishes their confessions that the firm of *Hunter, Sterling & Co.* was composed of the four defendants." I may also remark, that it is a matter of course, in a proceeding against joint debtors or copartners under the statute, where the instrument declared on is a promissory note or bill of exchange, to have the clerk assess the damages and enter a joint judgment against all the defendants, upon the implied admission of the one who has been served with process, of their joint indebtedness. The question, therefore, *whether the evidence of general reputation alone was sufficient to charge Wightman* as a copartner did not arise in the case ; and the defendant's counsel had no right to call upon the court to charge the jury on that subject.

As against *McDougall,* the defendant here brought into court, there was sufficient evidence to authorize the jury to find that he had made himself liable to the plaintiff as a copartner *in both firms,* independent of any evidence as to general reputation. His own witnesses who were examined in England, and who knew the agreement under which he came out, prove that *Ansley* represented *himself and Wightman* as composing the firm of *John D. Ansley & Co.;* and it was with them, and them alone, that he was to go into copartnership, if with any body, as the written agreement shows ; and immediately upon his arrival at New-York, where the other branch of the house was to be established, he found his name over the door as one of the members of the firm. He suffered himself to be introduced as a partner, and remained there until the concern exploded, without taking any steps to have his name removed from the sign over the door, or to inform those who were dealing with the house that he was not a copartner. Under such circumstances, although as between him and Ansley and Wight-

man, he had a right to elect at the end of the year whether he would take a salary or a share of the profits of the partnership, he was clearly a partner as to the rest of the world, who knew nothing of this private arrangement between the individuals who were held out to the public as copartners by these introductions and by the sign over the door.

As the drawers and acceptors of the bills in this case were the same persons, or at least, as there is not a shadow of doubt that *Ansley* was a member of both firms, the refusal of the firm in Charleston to pay the bills was notice of their dishonor to him, and, fr course, to the New-York firm. *Gowan* v. *Jackson*, 20 *Johns. R.* 176. *Johnson on Bills,* 23. It is therefore unnecessary to inquire whether the statement in the protest of the deceased notary was of itself sufficient evidence of notice of the dishonor of the bills. And it now appears to be settled, nothwithstanding the *dictum* of Mr. Justice Van Ness in *Miller* v. *Hackley,* 5 *Johns. R.* 375, that a bill of exchange drawn in one state of the union and payable in another, is a *foreign bill,* within the meaning of the rule which makes the notarial protest *prima facie* evidence of the presentment and dishonor of such bills. *Buckner* v. *Finley,* 2 *Peters' R.* 586, *and other cases cited in opinion of Justice Cowen. See also Johnson on Bills,* 31, and *Muir on Bills,* 52, *as to bills drawn between England and Scotland and Ireland.*

I have therefore arrived at the conclusion, that no error in law occurred upon the trial of this cause to the prejudice of the defendant *McDougall ;* and that the questions of fact were properly submitted to the jury for their determination thereon. For these reasons, although I concur in opinion with Mr. Justice Cowen in reference to the abstract question of law upon which his decision was based, I think the judgment of the supreme court should be *reversed,* so that the plaintiff may be restored to his judgment in the superior court of the city of New-York.

By Senator EDWARDS. The material points in this case appear to be, whether the judge of the superior court of the city of New-York was bound to charge the jury that gene-

ral reputation was not alone sufficient to establish the co-partnership ; and whether he charged correctly.

At the close of the testimony, the defendant's counsel, among other things, requested the court to charge the jury that the plaintiff could not recover, unless he shewed that the defendant *Wightman* was a partner in the firm of Ansley, McDougall & Co., and that general reputation was not alone sufficient to establish the fact. The court are undoubtedly bound to give an opinion, if required, upon any point of law necessarily connected with the issue, whether it originates from the pleadings or the testimony produced on the trial. *Douglass* v. *McAllister,* 3 *Cranch,* 300. *Scott* v. *Lunt,* 7 *Peters,* 607. But the court can never be required to declare the law upon a hypothetical question foreign from the cause, 11 *Wheaton,* 75, or upon an abstract point of law, unless it be so stated as to show its connection with the cause. *Hamilton* v. *Russell,* 1 *Cranch,* 310. In all such cases, as I understand the law, the court may refuse to give an opinion, and if the party proposing the question is dissatisfied, he may except to such refusal, which exception will avail him, if he shows that the question was warranted by the testimony, and that the opinion he asked ought to have been given.

Had there been in this case no other testimony than that of general reputation, and had the counsel called upon the court to charge that this testimony was not alone sufficient, I think the court would have been bound so to charge ; for I readily admit, that in my view, *proof of general reputation* that a copartnership exists, is not sufficient to prove the fact whether such testimony is admitted with or without objection, and so I believe it has been held in most if not all of the cases where this has been the only testimony offered ; but in most of this class of cases, the testimony has been objected to *in limine,* as in 2 *Har. & Johns.* 400, in the court of appeals of Maryland ; in *Goddard* v. *Pratt,* 16 *Pick.* 433, and in *Brown and others* v. *Crandall and others,* 11 *Conn. R.* 93. But in the case under review, no objection was made to the introduction of the testimony as to general reputation ; but the judge, after the testimo-

ny was closed, was called upon to charge that general reputation alone was not sufficient to establish the fact of copartnership, when this too was not the only testimony in the case on which the plaintiff relied to show that fact.

It is not for *McDougall* to say there was no such firm as *John D. Ansley & Co.*, for the proposition was made to him in the name and behalf of this firm to enter into the copartnership, and this proposition formed the inducement for him to come to this country ; and the question is, does it depend upon general reputation alone that he was a partner with this firm, or did he suffer himself to be held out to the world as such partner. A sign was put up in the fall of 1825, over the door of their counting house in Pearl-street, New-York, in a conspicuous place, representing their firm to be *Ansley M'Dougall & Co.*, which remained until winter. This sign was up when M'Dougall arrived, the 8th of November, and had been for about three weeks previous. M'-Dougall went on board the ship for Charleston the 3d of December, but did not sail until the 5th ; Ansley left a week or fortnight after, but the sign was not taken down until after they left New-York. Thus the sign must have been up between three and four weeks, while M'Dougall was passing in and out of the store, and yet he took no steps to remove it, and even left it thus to represent the firm when he left New-York. During this time the checks in question were drawn in the name of the firm, as it appeared on the sign, and discounted. Again : one of the witnesses, states that he was introduced to M'Dougall by Ansley in the store, as his partner, and relates a conversation he had with Ansley and M'Dougall relative to the goods in the store. These and other facts and circumstances, which might be enumerated, presented by the case, were proper subjects for the consideration of the jury, and although the proof of general reputation would not, of itself, be sufficient testimony to establish a copartnership, yet, in my judgment, it is competent testimony, and may be taken into consideration by the jury, in connection with the other facts in the case, when a plaintiff is endeavoring to make out a copartnership among defendants. This doctine has been re-

cognized by the supreme court of this state. In the case
of *Whitney* v. *Sterling,* 14 *Johns. R.* 216, the court say:
" The only question in the case is, whether the testimony is
sufficient to charge Jacob Brown as a partner with the other
defendants. There was no objection as to the testimony
of general reputation. It must therefore be considered as
evidence in the case, and as forming a part of the testimo-
ny upon which the jury was to determine the fact of part-
nership; nor could any objection have been made to such
evidence. Whether general reputation ought to be suffi-
cient, may be questionable, but such testimony is compe-
tent, and there are circumstances in the case which go very
much in corroboration of it." Precisely so here. I con-
sider the testimony competent, and there are in this case
several facts and circumstances which go in corroboration,
all constituting proper subjects for the consideration of the
jury.

In some cases the supreme court of this state has carried
this doctrine much further. In the case of *Gowan* v. *Jack-
son,* 20 *Johns. R.* 178, Mills, the witness, testified that he
had done a good deal of business for the defendant, and
had sold goods to a large amount by his orders. He had
always understood there were two brothers connected in
business—the defendant and Daniel Jackson, and that the
firm in London was Jackson & Brothers, and that the firm
here was either Joseph Jackson or Joseph Jackson & Co.,
which he did not recollect; and that he understood from
common report that the defendant was a partner of the firm
of Jackson & Brothers, in London, and that had so un-
derstood in the course of business, and in the settlement of
accounts made by him with the defendant. The testimony
the court deemed sufficient *prima facie* to show a co-
partnership, and as casting the burden of proof upon the
defendant to show the commencement of the partnership,
if it began at a time subsequent to drawing the bill. How
much Mr. Justice Spencer (who delivered the opinion of
the court,) relied upon the proof of general reputation, as
*prima facie* sufficient, does not appear from the case, as he
speaks of the testimony collectively—but as this was the

principal testimony as to the foreign partner, it is fair to presume he placed much stress upon it. In *M'Pherson* v. *Rathbone,* 11 *Wendell,* 98, the court say it was undoubtedly competent to have proved a partnership of all the defendants by general reputation, but probably no such reputation could be shown as to Samuel Rathbone. If Chief Justice Savage (who delivered the opinion of the court in this case) intended to lay down the broad doctrine that a copartnership may be proved by general reputation, I am of the opinion he has carried it further than it has been carried in any other case, and further than prudence and sound discretion would warrant. But I am not prepared to believe he intended thus to extend the doctrine. As the case then under consideration called for no such decision, I think that portion of his opinion is to be regarded rather as a *dictum,* than as laying down so important a principle of law. While no case has been found to sanction the doctrine to such an extent, there are several cases which, either in substance or in direct terms, repudiate it. *Whitney* v. *Sterling,* 14 *Johns.* 216. 2 *Har. & Johns.* 400. *Brownson* v. *Crandall,* 11 *Conn. R.* 93. *Goddard* v. *Pratt,* 16 *Pick. R.* 433.

The position contended for by the plaintiff's counsel, that in actions against partners, it is not required of the plaintiffs to give as strict proof of the existence of the copartnership, as partners themselves are required to give when they are plaintiffs, is undoubtedly correct. *Cary on Part.* 136. And the reason is obvious. In the latter case the facts are presumed to be within their own knowledge ; but not so when the plaintiff is endeavoring to show the defendants partners. In such cases, to establish a joint liability, it is sufficient for the plaintiff to show that the defendants have held themselves out and appeared to the world in the character of partners, and that they have carried on their business together. *Cary on Part.* 136.

I am of the opinion, therefore, that the testimony was proper to be submitted to the jury, and was properly submitted ; that the charge of the judge was correct, and that the judgment of the supreme court should be reversed.

Russell v. Schuyler.

On the question being put, *Shall this judgment be reversed?* all the members of the court voted in the *affirmative.* Whereupon the judgment of the supreme court was accordingly REVERSED.