By the Court—Woodruff, J.
An exception was taken on the trial to the ruling of the Chief Justice admitting the agreement in evidence upon which the action is founded. Although that exception is referred to in the points of the defendant’s counsel as a part of the history of the cause, it was not claimed by him that the ruling was erroneous, and no such suggestion appears upon the points submitted.
Unless it is true that in this action the- plaintiff can have no judgment against the defendant Farrell, who alone appeared and answered, without establishing a right as against Higgins, (the co-defendant,) to a joint judgment against both, then the objection was utterly groundless. As between the plaintiff and Farrell, sufficient proof was given to bind Farrell; indeed, it was admitted that he himself signed the. agreement, and that he also signed Higgins’ name, in form, as his agent or attorney. That admission concluded Farrell. He could not deny his own authority, and as to him, it is to be assumed that he had authority to sign and seal the agreement for Higgins.
*200 But such a signing, and Farrell’s admission on the trial, did not bind Higgins without other proof. If, therefore, the plaintiff was bound to prove oh the trial, by evidence competent as against Higgins, that the lease was executed by his authority, or in default thereof fail to recover as against Farrell, then although as against Farrell, the agreement was competent evidence—the plaintiff could not recover.
This inquiry involves the, next exception taken on the trial, viz.: to the refusal of the Chief Justice to dismiss the complaint because a joint guaranty had not been proved.
The case, as made up and submitted to us on the argument, does not show whether the summons and complaint have been served on the defendant Higgins. If they were, and he neglected to appear and answer, then he admitted that the agreement was executed by himself; as to hito, the verdict was a mere assessment ; and, therefore, when by proof, competent as against Farrell, the execution of the agreement by both was established, the plaintiff was entitled to claim against both as joint guarantors or sureties, and the objection is groundless. (See Halliday v. McDougall, 22 Wend., 264; Downing v. Mann, 3 E. D. Smith, 36.)
And if, in truth, the defendant Higgins was never served with process, then the case of Halliday v. McDougall shows that if the plaintiff gave proof sufficient to charge Farrell as a joint contractor with Higgins, it was enough to entitle him to a joint judgment.
And it has already been said that Farrell, having assumed to sign for his co-defendant, he was not at liberty to deny his own authority. That was proof enough, as to him, of his joint liability.
But it is now settled that under the Code it is not necessary that a plaintiff who declares against two upon an alleged joint contract should establish a joint liability or fail in his action. That the rule was otherwise before the Code is unquestionable, and numerous decisions were made since the Code was enacted, that in this respect the Code had not altered the common law rule. But the Court of Appeals, in Brumskill v. James, (1 Kern., 294,) held that the common law rule is altered, and that now, under sections 274 and 136, judgment may be had against the defendant, who is shown to be liable although proof is not given that is sufficient to charge his co-defendant, if the case proved *201 is one in' which the defendant would have been liable if sued alone. (Claflin et al. v. Butterly & Devin, 5 Duer, 327.)
The other ground upon which a dismissal of the complaint was urged was that the lease to the tenant had been surrendered and the surrender accepted.
To dispose of this, so far as it is alleged to constitute a reason for dismissing the complaint, it must suffice to say that what is called a surrender, viz.: the reletting of the premises, was not made until the 1st of May, 1855. Only $250 of the plaintiff’s claim accrued after that time. A surrender, where one takes place, does not operate to release the tenant from rent already accrued. And if such a change in the relation of the parties could have any other operation upon the obligation of the sureties for the rent, (e. g., as an alteration of the principal contract without the consent of the sureties,) there is no foundation here for such a claim, because in this case it is proved without contradiction that the reletting relied upon as'a surrender was by the authority and consent of the defendant.
Whatever, therefore, may be the effect of this reletting upon the right of the plaintiff to claim rent from Newman or his sureties, from and after the 1st of May, 1855, it furnished no reason for dismissing the complaint. The rent accrued to that day, and in arrear, was not thereby-released, nor was the plaintiff’s right to recover therefor affected. (Sperry v. Miller, 16 N. Y. R., 407.)
The remaining exception was to the refusal of the Chief Justice to order judgment for the defendant for the amount of the damages set up by him as a counterclaim, so far as such amount exceeded the claim of the plaintiff.
No proof whatever was given of the facts alleged in this part of the defendant’s answer, and therefore if they .constituted any “defense’.’ to the action, they were in. issue by law and not being proved they cannot.avail the defendant. Matters of mere defense call for no reply. (Code, § 168.)
But if the facts stated would, if true, constitute a legal counterclaim, then, unless put in issue by a reply, they are to be deemed admitted.
We are of opinion that the reply in this case was not sufficient to put those facts in issue. No one fact alleged as a ground of counterclaim is denied by the reply; all that the "reply contains *202 is a denial that the plaintiff is .entitled to the sum he claims for damages, or to any other sum. It seems rather to admit the facts to be true, and to insist that the plaintiff is nevertheless not entitled to damages.
But the motion was properly denied upon either of two grounds :
1. If the facts alleged, to wit: the taking possession of and the detention of the defendant’s fixtures and furniture, would constitute a proper counterclaim in this action, the omission to reply did not admit the value of the property nor the amount of damages. A counterclaim is in -the nature of a complaint in a cross action, and in an action for taking or converting personal property, it is not necessary for a defendant to deny the amount of value or the allegation of damage. They must be proved on an assessment although the defendant puts in no answer. (Connoss v. Meir, 2 E. D. Smith, 314; Butterworth v. Kennedy, Sup. Ct., G. T., Nov. 27th, 1858.) So here the defendant, if his facts warranted a counterclaim, should have proved his damages, and not having done so he could claim to be allowed nominal damages only..
2. The facts alleged do not constitute a counterclaim. They neither arise out of the contract which is set forth in the com-' plaint as the foundation of the plaintiff’s claim, viz.: the agreement of suretyship, nor out of any other contract, nor are they connected with the subject of the action, viz.: the rent of the store.
They show a mere tort, a trespass to personal property, and an unlawful detention thereof. This is no counterclaim in an action on contract for the rent of a store. (Drake v. Cockroft, 4 E. D. Smith, 34; 10 How. Pr. R., 377.)
This disposes of all the questions which were raised at the trial.
Upon the argument before us at the General Term the defendant’s counsel presented for our consideration several points, then for the first time suggested.
If on the hearing of a cause in which the verdict is taken at a litigated trial, subject to the opinion of the Court upon the questions of law, the General Term should permit any questions of law to be raised which were not raised on the trial, it should not be such as if suggested there, might readily have been obviated.
*203 The defendant here, now objects that the proof does not sufficiently show that the tenant -did not pay the rent, nor that it was demanded of him.
Had any such suggestionbeen made the plaintiff would have had an opportunity to give further proof on those points if he thought proper.
And if we deemed the proof in these particulars, defective, we should be reluctant to order a new trial when, as in this case, it is manifest, from the history of the trial given in the papers, that no importance was attached to this question, and that both parties conducted the trial, not indeed upon any formal admission that these facts were sufficiently proved, but upon a plain recognition that they were true.
We think, moreover, that enough was proved. The plaintiff’s witness testified in terms to the amount of rent in arrear, and the lease showed when -it accrued. If the defendant will take the benefit of the payments admitted in the complaint to have been made, then computation fixes precisely when the default took place, and just how much of each quarter’s rent was in arrear. If the defendant desired any more specific evidence, he had an opportunity to cross-examine the witness. As the case stands his statement in general terms of the amount in arrear is prima fade sufficient.
In relation to a demand of the tenant, the proof is of a demand in November, 1854. That the tenant then failed and the store was closed, and thereafter demand was made of the surety, and no objection is suggested down to this argument that a demand from the tenant was desired, or would avail anything. If a demand were material, it would be no injustice to hold the objection waived. Had the objection been made, even on the trial, the plaintiff would have had an opportunity to show either a demand, or that due diligence was used, or show other circumstances excusing a demand.
We, however, do not think that, where the tenant had failed and abandoned the premises, it was the duty of the plaintiff, under this agreement, to pursue him for the purpose of making a demand from quarter to quarter. The undertaking of the defendant was absolute and unqualified to pay the rent if the tenant did not, and that without requiring notice of the tenant’s de *204 fault. He undertook to see to it that the rent was paid. This is unlike an undertaking that another shall pay on demand. (5 Hill, 37.)
Although the reletting by the plaintiff to Weston did not discharge the defendant from liability, for rent already accrued and in arrear, and therefore was no ground of nonsuit, it is now insisted that it has effect as a surrender, by operation of law, and therefore the defendant was discharged from any liability for rent accrued after the first day of May.
That an entry upon the demised premises, and the giving of a new lease by the landlord to a third person, with the consent of the original lessee, the occupation by the new tenant, and the acceptance of rent from him by the landlord, would terminate the right of the landlord to claim rent of the original lessee, cannot be denied. (Schieffelin v. Carpenter, 15 Wend., 400; Hegeman v. McArthur, 1 E. D. Smith, 147; Stone v. Whiting, 2 Stark. R., 235; Sparrow v. Hawkes, 2 Esp. N. P. R., 505; Thomas v. Cook, 2 Barn. & Ald., 119.)
So it was held in Walls v. Atcheson (3 Bing., 462,) that where a tenant quit the possession in the middle of a term, and the landlord let them to another tenant, he could not recover against the original tenant. In that case, however, the lease is not stated to have been in writing, and the Court treat the acts of the landlord as a rescission of the agreement for the letting and hire of the premises.
Again, the lease provided that if the' rent was not paid, the landlord might re-enter. The lease was forfeited if the landlord chose to avail himself of his right of re-entry. But even then the tenant would remain liable on the covenants for all rent which accrued and became payable before such re-entry. (Hall v. Gould, 3 Kern., 134, and cases cited.)
Probably there was not enough shown, however, to entitle the landlord to re-enter as for a forfeiture. (See 2 Comst., 141; 16 How. Pr. R., 449.)
And if the act of the landlord in taking possession of the premises and letting them to Weston, was not with the assent of the tenant, and did not amount to a surrender, and was not a reentry to enforce a forfeiture of the term, then it was an eviction of Mewman, and an eviction suspends the rent until the pos *205 session is restored to the tenant. But an eviction does not prevent a recovery of rent accrued and payable before the eviction takes place. (Giles v. Comstock, 4 Comst., 270; Vernam v. Smith, 15 N. Y. R, 327.)
Surrender, entry and eviction would either of them terminate the right of the landlord ■ to collect rent accruing and payable thereafter.
But as between the defendant, Farrell, and the plaintiff, there was neither eviction, entry nor surrender, which affected Farrell’s liability.
There was no eviction. As to him, nothing illegal or tortious was done. On the contrary, the reletting was. by his express request and authority and for his benefit. Unless, then, the re-letting operated per se as a surrender, a voluntary acceptance of the new tenant as a substitute for the former lessee, the reletting only affected the defendant, Farrell, to the extent which the rent paid by the new tenant reduced the amount for which he was liable to the plaintiff.
McFarlane asked the defendant iflre would allow him (McFarlane) to rent the premises for him. He authorized McFarlane to put a bill on the house. He told McFarlane to do the best he could, and he would be satisfied. McFarlane put a bill on the store as authorized by the defendant, and received a number of applications. The plaintiff being informed of the authority given to McFarlane, introduced Weston to McFarlane as the defendant’s agent. McFarlane and Weston agreed upon the rent, which rent was the best that could be got. In the further language of the witness, McFarlane, “ The defendant, Farrell, authorized McFarlane to rent the premises, and upon that authority he did rent them to Weston.”
Here is clear proof of an authority by the defendant to rent the premises on his account, and for his benefit, and they were so rented. Nothing can be more obvious than that, if McFarlane had been in such a condition that he could have given to Weston a lease in the name of Farrell, the defendant, the new letting could have in no wise affected the plaintiff’s rights. But Farrell had gone to Europe. His agent, Mr. Wight, requested McFarlane to lease the premises. The tenant would reasonably expect a lease from some person who had some title to give. In *206 those circumstances, compliance by the plaintiff with the request of the defendant, to give the lease to Weston, and so secure a . letting for the defendant’s benefit, ought not to be regarded as a discharge of the defendant from liability for the residue of the rent. So to hold would be doing violence to the manifest intent of the transaction and the understanding of all parties. It was but a reletting for the defendant’s account and risk, done in good faith, by his express authority, for his own account and for his benefit as a reduction of his liability. As to this defendant, the reletting should operate no more to the prejudice "of the plaintiff than if it had been done in pursuance of an original authority reserved to him in the lease, to relet the premises in case of default by the first lessee, and apply the proceeds of the reletting in reduction of the rent originally reserved.
The circumstance that McFarlane’s connection with the transaction grew out of his agency for the plaintiff does not affect this view of the subject. If McFarlane be regarded as the plaintiff’s agent, still the new lease was made in consequence of the defendant’s request that the premises should be relet for his benefit. If such request was made to the plaintiff’s agent, then it was in law a request to the plaintiff, and the case then is, that Farrell, the defendant, being liable for the full rent, and "the premises being unoccupied, requested the plaintiff to relet them. He could not in this aspect of the case have expected the plaintiff to relet them in his (Farrell’s) name, but only that he let them for his benefit, in so far as the rent reserved and thereby obtained might satisfy his liability.
• And on the other hand, if McFarlane be regarded as acting, not as the plaintiff’s agent, but as agent for the defendant, (as he himself states and evidently understood his relation to the transaction,) then he did procure a tenant for the defendant, agreed upon the rent, and his request to the plaintiff and procurement of the lease to Weston in pursuance of the defendant’s authority, was tantamount to a direct request by the defendant himself to the plaintiff and an authority to the plaintiff to give the lease and look to Farrell for the deficiency of the rent.
The plaintiff has therefore done nothing in all this, except at the defendant’s request, with a view to his relief. All has been done in good faith, and done discreetly with reference to the *207 defendant’s interest in the matter. Such a transaction, we think, cannot operate either legally or equitably to discharge the express covenant of the defendant.
It is further insisted, however, on this appeal, that the instrument upon which the action is brought was executed upon a consideration already past, to wit: in consideration of a previous lease already executed and delivered to the original tenant, Newman. That a past consideration is not sufficient in law to uphold an agreement of guaranty, and that, therefore, the defendant is not and never was liable to the plaintiff for the rent sued for.
The instrument upon which this action is brought is an undertaking to answer for the default of Edward H. Newman, the plaintiff’s lessee.
Such an undertaking, to be valid and binding, must be in writing, and in some form it must express the consideration, either in words or by a form that as matter of law imports consideration. (2 R. S., 135.)
An instrument, under seal, is held not void under the statute, although no consideration is in terms stated therein, upon the ground that the seal imports consideration. It is sufficient, if upon the face of the instrument consideration is a necessary legal implication. (Maghee v. Kellogg, 24 Wend., 32; Bush v. Stevens, id., 256.)
And it is, therefore, said that án iustrumént under seal is not within the statute of frauds. (Barnum v. Childs, 1 Sandf. R., 58; 11 Barb. S. C. R., 14, and cases therein cited.)
The instrument in question expresses- a consideration by its terms, and is also sealed by the defendant. There is, therefore, no pretence or claim that it is invalid within the statute of frauds.
It purports to have been entered into “ in consideration of the demise of the premises above mentioned,” (i. e., the demise contained in the instrument underneath which it was written,) to the “ party of the second part,” i. e., to the party to the lease, who was not a party to the underwriting.
It bears the same date as the lease, and is attested by the same witness. By reference, it is made to form a part of the same transaction. Its most obvious import as well as the natural inference from what appears upon the two instruments is that they were executed simultaneously, and that the giving of the *208 lease was the inducement to the execution of the instrument of guaranty, and constituted the consideration thereof. And such a consideration is sufficient.
Although the form of words employed in the instrument is not best adapted to express a present consideration, we are clear that it does not necessarily import that the consideration is past, and that the demise had already been executed and delivered; but that the more natural signification is, as already suggested, that both were one transaction. That the giving of the lease was the consideration moving the defendant to execute the instrument, and the execution of the instrument by the defendant was one of the considerations moving the plaintiff to execute and deliver the lease to ¡Newman.
The plaintiff was, therefore, entitled to maintain an action on the instrument, and the suggestion of the defendant’s counsel that the instrument was founded upon a consideration already past, and that it is therefore nudum pactum is not warranted by ■» the instruments themselves, nor by any proofs given at the trial.
The instruments, therefore, and the other proofs given on the trial, sustain the plaintiff’s claim, and entitle him to recover. And had there been no recital or mention of consideration in the instrument executed by the defendant, the plaintiff would still be so entitled because the seal imported consideration sufficient in law to sustain the covenant. And although the seal is not now conclusive, still its prima facie, import must prevail unless the defendant gives evidence to destroy the legal implication.
It is, however, urged that the plaintiff has, in the complaint itself, stated that the instrument was executed after the lease to ¡Newman was made and concluded, and has thus by his own admission shown that the consideration was wholly past, and therefore insufficient to sustain the covenant.
The case of Barnum v. Childs, above cited, would seem, if followed to the full extent, to warrant us in saying that the seal to the instrument carried with it such a legal implication, that although the consideration mentioned was a previous lease already executed, still the seal wa& prima facie evidence of some sufficient consideration for the defendant’s covenant that the rent reserved in such lease should be paid; and the sealing having been averred in the complaint and proved on the trial, that this was *209 enough to put the defendant to proof that there was in fact no legal consideration.
But, as already observed, the fair and reasonable inference from the instruments is, according to their natural and sensible construction, that they were executed simultaneously. The giving of the lease to Newman being the inducement to the defendant’s covenant, and this is sufficient to uphold it, whether the seal prima fade imports other or further consideration or not. The defendant on the trial not only failed to give any evidence showing a want of consideration, but no suggestion was made that consideration enough was not proved by the instruments themselves. Under such circumstances, although the form of words used in the complaint is susceptible of a construction indicating that the only consideration for the covenant was a previous lease already concluded, we ought not to give it such a construction and send the parties to a new trial, or put the plaintiff to a new suit, unless the complaint is so bad in substance that the discrepancy between the allegation and the proofs must be treated as a fatal variance.
The proofs were received without objection, and a sufficient cause of action is made out. If the words of the complaint may be read consistently with such proofs, it is our duty so to read them. The only ground of the objection lies in the language, “the lease having been so made and concluded,” “the defendants afterwards in consideration of the demise, &c., covenanted, &c.” It is doing no violence to this language, when we bear in mind the facts which did sufficiently appear on the trial, and the rule of the Code that pleadings “ shall be liberally construed with a view to substantial justice between the parties,” (Code, § 159,) to say that the pleader did not by these words intend, and was not understood by the defendant to mean that the lease to Newman had been executed and delivered - before the guaranty was made.
And ..even if the more natural construction of this language be, (as we think it is,) that the lease was in order of time completely finished before the guaranty was made, still we think that the erroneous statement in this respect should not now estop the plaintiff to insist upon his rights according to the truth of his case, as sufficiently proved without objection. In this aspect the *210 error in the statement is only a variance, which has not misled the defendant, and which might he either amended or disregarded.
Our conclusion is that the nlaintiff should have judgment upon the verdict.
Ordered accordingly.