By the Court—Woodruff, J.
To entitle the plaintiff to recover, he was bound to prove that it was the duty of the defendants to pay, for his exoneration, a note which was dated January 21, 1834, made by the plaintiff payable to the order of the defendant Godwin, and indorsed by him and by the defendant Stebbins.
The declaration contained nothing but the usual money counts in use under our former system of practice; and the ground, and sole ground, on which the plaintiff claimed to recover was that the defendants were bound to take up that note for $1,500, and indemnify him against the same, and, not having done so, the plaintiff, who had paid the same, was entitled to recover the amount thereof with interest, as for so much money paid to the use of the defendants.
It is obvious that the very face of the note is evidence that the plaintiff, and not the defendants, was bound to pay the note.
The plaintiff, therefore, before he could ask to have his case submitted to the jury, was bound to give evidence which overcame the presumption arising from the plaintiff’s own signature and promise, and establish, with reasonable certainty, or, at least, probability, that the defendants were bound to pay it.
To this end he showed that it was one, and the last, of a series of renewals of a note for $2,000, dated May 14, 1833, made by himself payable to the order of the said defendant Godwin at sixty days, and indorsed by Godwin and by Stebbins, upon which, on or prior to the 19th of November, 1833, $500 was paid; which note was discounted at the Dry Dock Bank, in which the defendant Stebbins was a Director, and the proceeds *545 of which, when so discounted, were placed to the credit of the plaintiff.
The fact of the successive renewals by the parties, coupled with the fact that the plaintiff received the proceeds of the discount, was, we think, sufficient to alter somewhat the presumption arising from the face of the note that the money was due thereon to the payee, but not to show, in any degree, that the plaintiff was not bound to pay it. On the contrary, the transaction indicated that Godwin and Stebbins had indorsed the note for his accommodation and benefit, and that he, receiving the proceeds on the discount thereof, was bound to pay it, not only in discharge of his own liability, but for their protection and exoneration.
The plaintiff, in further proof of the case he desired to establish, produced another note, dated November 11, 1833, for $2,000, made by the plaintiff payable to the order of Godwin and indorsed by the defendants Godwin and Stebbins, and proved that, in the years 1834 and 1835, Stebbins was called upon, as indorser, to pay this last-mentioned note to the then holder thereof; that, in the conversations then had, the defendant “ Stebbins said that he and Mr. Godwin were to supply $3,000 as Mr. Taylor’s part of the capital in the partnership with Mr. Treadwell. He observed that, if he paid this note for $2,000, in addition to another note for $2,000, he would have advanced $1,000 more than he was to advance.”
This conversation tended, unquestionably, to prove that at some time prior to the date of such conversation, the defendants, Stebbins and Godwin, had agreed to advance for Mr. Taylor the sum of $3,000, to be contributed as his part of the capital in a copartnership with the present plaintiff—but when or how it was to be contributed — when the partnership was formed—or whether the partnership still continued—it was not shown. Nor did the conversation sufficiently show, that indorsing the note now in suit, or agreeing to pay it for the plaintiff, was the mode in which the advance was agreed to be made, while all the other circumstances indicated the contrary. If this note was made and indorsed as a means of raising that capital, the defendants should have been the makers instead of indorsers of the note.
*546 The defendants may have made the agreement testified to, and may be liable if they have not performed it, but proof of such liability did not warrant any finding that they agreed to take up or pay the plaintiff’s individual note. Nor can the conversation be construed into an admission that the defendants ever agreed to pay the plaintiff’s notes to any amount.
Nor is it apparent how paying the plaintiff’s nóte, the proceeds of which he had received individually, would, upon any facts proved by the plaintiff, have been performance of an agreement to contribute capital to a copartnership between Treadwell & Taylor.
Upon the evidence given and received at the trial, we think there was nothing which would have sustained a verdict that the original note dated May 14th, 1833, for $2,000, or the renewal thereof dated January 21, 1834, for $1,500, was a note which the defendants had agreed to pay.
But the plaintiff, on the trial in further support of his claim, produced a judgment record in a suit upon the $2,000 note mentioned by the witness with whom the conversation above stated was had. That note, after such conversation, came to the hands of the defendant, Stebbins, (presumptively by his taking it up in discharge of his liability to the holder as the indorser thereof,) and he, Stebbins, brought his action thereon against the present plaintiff, as maker. The suit was defended on the ground that the said note was made by the plaintiff, Treadwell, at the request of the defendants, Stebbins and Godwin, to enable them to raise a part of the sum of $3,000 which they had promised and agreed to furnish to the said Taylor, then a partner with the plaintiff, transacting business under the firm name of “ Francis C. Treadwell," to be used and employed as a part of the capital in the said business; and that the defendants, Stebbins and Godwin, agreed that they would pay the said note to the holder thereof when it should become due. The plaintiff offered this record in evidence, and offered to prove that the only matter controverted on the trial of that action was the matter so set up as a defense. The record showed a verdict for Treadwell, and a judgment in his favor (¡hereon.
The'record and this further evidence was rejected.
*547 Now unless there was some proof warranting an inference that the note given in May, 1833, was given upon the same consideration as the note given in November, 1833, proof that the latter was an accommodation note made by the defendants’ request, and to enable them to raise money, would not alone show that the note given in May was an accommodation note also. And yet if there were circumstances tending at all to prove such an identity, the proof relating to the November note might tend to destroy any supposed improbability, arising from the order of names upon the .note, that such an agreement was made, and included the May note.
The record and the evidence offered in connection therewith would have established the material fact that there was an agreement by the defendants to advance $3,000 to Taylor, to be used as capital by the firm mentioned. And that a part of such advance was raised by the making, by Treadwell at their request, of a $2,000 note which was used to enable them to raise the money. And if there was evidence, though slight, tending to show, that the previous note was made for the same purpose, the record and the testimony offered in connection therewith, should have been received,
Where two notes are given upon a single consideration, and one has been put in suit and facts directly in issue, which if true must affect both notes alike, are established by verdict and judgment, the verdict and judgment are evidence of those facts in a suit between the same parties on the other note. (Gardner v. Buckbee, 3 Cow., 120; Burt v. Sternburgh, 4 id., 559.)
If therefore this evidence had been received, the only inquiry would have been, Was the May note given upon the same consideration in whole or in part? And has the plaintiff paid or provided for the one-half part as to which there is no pretense, that it was not made for his own benefit.
While we feel that the testimony is slight, we think that upon the reception of the evidence, which, as above suggested, was in its nature relevant and competent, the plaintiff would have been entitled to submit the question to the jury. The conversation with the witness Laing may be understood as fairly importing, that the defendants were to supply the $3,000, and that the advance they were to make had some connection with two *548 notes, each for $2,000, and that the advance had not then been made, and that Stebbins’ hesitation, in regard to paying the note presented to him, was because he did not wish to pay $2,000, and remain liable for another amount greater than he had agreed to advance. The conversation indicates that in the mind of Mr. Stebbins a payment of the $2,000 note would have been equivalent to an advance of $2,000, towards the $3,000 which he was to advance. It is true that standing alone it does not show that the advance was agreed to be made by paying the sum specified upon the notes of the plaintiff, but in connection with the rejected evidence, which showed that one of the notes was in fact made as a means of raising so much of the $3,000, it would not be against evidence to infer that the whole $3,000 was raised in the like manner, and that the objection which at the time of the conversation existed in the mind of Mr. Stebbins, was obviated by the plaintiff who apparently had already reduced the May note to $1,500, and afterwards furnished Stebbins two small notes, amounting to another $500, which were paid in May, 1854.
We cannot say that these proofs are conclusive, or that it can be inferred from the mere fact that the November note was made for the defendants’ • accommodation, that the May note was so made. If there was in 1834 or 1835, or at any time after the November note was given, any other note outstanding to which the conversation may have related, the proof seems to us to fail entirely.
But, as the case stands, we think the Judge erred in rejecting the evidence offered, because, if it had been received and it had established what it was proposed to prove, the doubt of the plaintiff’s right and of the defendants’ liability would have made the case a proper one for the jury to determine upon the questions of fact.
We feel the force of the suggestion that the case savors strongly of staleness, and that the circumstances seem to indicate that the claim that this May note was an accommodation note is an ingenious expedient to effect indirectly a recovery under an agreement alleged to have been made twenty-seven years ago, and more than thirteen years before this suit was brought, when the statute had long barred any action thereon. But this circumstance, if it *549 be of force, may properly be addressed to the jury in connection with the other facts.
The propriety of suffering the plaintiff to recall his witness after he had been once examined, is to be determined by the Judge at the trial. As the general rule, it is a matter resting in his discretion; and, unless it be quite palpable that that discretion was unwisely exercised, and injustice has been done, the refusal of the Judge to permit a further examination would not furnish ground for ordering a new trial. It may sometimes be perceived by the Judge that the discussions in the progress of the trial, after the party has examined his witness, have had the effect of instructing the witness as to the very point and pinch of the case, and have informed him just what the party wishes him to testify. This—and, if he be a willing witness, other circumstances which may be quite apparent to the Judge who sees the witness and his manner of testifying—may suggest to him that there would be great danger of injustice if the party be permitted to recall him to meet an exigency. We see nothing of the kind on this trial; and, so far as appears on the Case, the Judge might well have suffered the witness, Mr. Laing, to be recalled and examined further by the plaintiff.
It is further insisted by the defendants that, as this action is brought against the defendants upon an alleged joint liability, that joint liability must be established by proof that is competent as against the defendant Godwin; and no evidence of Stebbins’ admissions could affect him: that there was, therefore, as against Godwin, no evidence whatever of his liability, and, of course, no joint liability was proved, and the nonsuit should be sustained.
As the action was brought and tried before the Code was enacted, this question must be disposed of as the law then stood. The defendants’ proposition, however, as the issue was presented, is not sound, to the extent claimed. It is true that the plaintiff was bound to prove a joint liability; and, had the defendant Godwin appeared and defended, he must have proved it by evidence which was competent proof as against Godwin.
But when one of two joint defendants makes default, or is not served with process, it is enough, on the trial of the issue made by the other, to show, by evidence good as to the latter, that he is liable, and liable jointly with his co-defendant; and this may *550 be done by his own admission, in Court or out of Court. If, therefore, in this case, the plaintiff had shown, by the admission of the defendant Stebbins, or otherwise, that he (Stebbins) was liable jointly with Godwin,.it would have entitled him to judgment, although the evidence was such as would not, as against Godwin, (had he defended,) have been competent to show that he was liable at all. (Halliday v. McDougall, 22 Wend., 264; Downing v. Mann, 3 E. D. Smith, 36.)
A new trial must be ordered; costs to abide the event.