## R. S. CROSS v. BURLINGTON NATIONAL BANK.

1. PARTNERSHIP—*Proof of, by General Reputation.* May the general understanding and report of the community be shown in connection with and corroboration of other evidence to prove the existence of a partnership? *Quære.*

2. OBJECTIONS TO TESTIMONY, *Must be Stated.* An objection to the admission of testimony, in order to be made available in this court as a basis for challenging the ruling of the district court thereon, must ordinarily specify the grounds of the objection.

3. INCOMING PARTNER—*Liability for Existing Debts.* While an incoming partner is not liable for the prior debts of the firm without a special promise, yet very slight testimony will be sufficient to prove an assumption by him of those debts.

*Error from Coffey District Court.*

THE *Burlington National Bank*, as plaintiff, recovered a judgment against *Cross*, as defendant, at the December Term 1874, for $3,592.64, and costs, and *Cross* brings the case here on error. The facts are stated in the opinion.

*Martin & Case*, and *J. M. Sheafor*, for plaintiff in error.

*A. M. F. Randolph*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This action was on a note given by D. Cross & Sons to the defendant in error. The case was tried by the court, without a jury. No special findings were made, but

only a general finding in favor of the bank.   The bank claimed that plaintiff in error was, at the execution of the note, a member of the firm of D. Cross & Sons, and liable thereon.   Two questions are presented.   Did the court err in the admission of evidence? and does the evidence warrant the judgment?   The firm of D. Cross & Sons were operating a flouring mill, and in proof that plaintiff in error was a partner therein the court received testimony that he was in the active management of the mill, that he made deposits, drew checks, and paid drafts in the firm name; that he put money into the business; that he made improvements about the mill, and "talked much about what they were going to

1. General reputation as proof of partnership.

do; that a deed of one-third interest in the mill property was made to him some months prior to the execution of this note, and that it was the common understanding and report in the community that he was a partner.   The last is the only testimony concerning which there can be any serious question.   It seems to trespass on the rule which forbids hearsay testimony.   An examination of the books shows that the authorities are conflicting.   Thus, it was declared competent in *Allen v. Rostram,* 11 Serg. & Rawle, 373; *Whitney v. Sterling,* 14 Johns. 214; *Gowan v. Jackson,* 20 Johns. 176; *Bernard v. Torrence,* 5 Gill and Johns. 388.   In some of these cases it was held to be competent only when received in connection with and corroborative of other evidence of the partnership; and such seems to be the views of Prof. Greenleaf, 2 Greenl. Ev. § 483.   See also *Turner v. McIlhaney,* 8 Cal. 575; *Carlton v. The L. W. Mill,* 27 Vt. 296.   Other authorities declare it incompetent under any circumstances.   *Brown v. Crandall,* 11 Conn. 92; *Halliday v. McDougall,* 20 Wend. 88; *Halliday v. McDougall,* 22 Wend. 264; *Sinclair v. Wood,* 3 Cal. 98; *Earl v. Hurd,* 5 Blackford, 248; *Inglebright v. Hammond,* 18 Ohio, 337; *Hicks v. Cram,* 17 Vt. 449; *Scott v. Blood,* 16 Maine, 192; *Bowen v. Rutherford,* 60 Ill. 41.   In support of the testimony, it may be remarked, that one who is not a member of a firm may make himself liable to a

third party as a partner therein, if he permits himself to be held out as a partner, or if his acts and conduct are such as fairly and justly to induce the belief that he is a partner. In the latter case, the mere belief of the party is not sufficient. The acts and conduct must be such as are reasonably and fairly sufficient to justify such a belief. Proof that the community generally understands and believes him to be a partner, tends to prove that his acts and conduct have been such as naturally, fairly and reasonably create such a belief. It therefore supports the reasonableness of the party's belief. In that light, it may perhaps, in some cases be competent testimony in connection with and corroborative of other evidence. In this case the officers of the bank testified that they supposed plaintiff in error was a partner.

2. Objections to testimony. Evidence was given of his acts and conduct tending to show him a partner. Does it not support the reasonableness of the officers' belief, that the entire community were led by the same facts and circumstances to look upon him as a partner? But again, no grounds of objection were stated; and it is a general rule, that if a party does not state his grounds of objection the court is under no obligations to search for any. It is like an allegation of error without any specification of the supposed error. *Walker v. Armstrong*, 2 Kas. 199; *Wilson v. Fuller*, 9 Kas. 176; *Luke v. Johnnycake*, 9 Kas. 511; *Marshall v. Shibley*, 11 Kas. 114.

Did the evidence warrant the judgment? If the question were simply whether the plaintiff in error was a partner at the time of the execution of the note, we should have little hesitation, for while the testimony of plaintiff in error, and of S. K. Cross, one of the partners, is positive and clear that he was not, yet there was abundance of testimony, circumstantial it is true, but sufficient to show that he was a partner; and any mere conflict of testimony must, as we have over and over decided, be settled by the trial court. Taking out the testimony of the two Crosses, and a very strong case would remain. The plaintiff in error receives a deed of one-

third the property, comes and assumes the active management of the business, puts money into it, makes deposits, draws drafts and checks in the name of the firm, makes improvements in the property, and so acts in reference to the business and property that the community generally consider him a partner. Surely this is ample to support a finding that he was a partner. And it concludes this court upon the question. *K. P. Rly. Co. v. Kunkel*, ante, 146. But the point of difficulty lies in the fact that the loan for which this note was

3. Liability of incoming partner for existing debt.

given was originally made several months prior to the time at which it is claimed plaintiff in error joined the firm, and it is said that an incoming partner is not liable for a prior debt of the firm without a special promise. As Chancellor Kent says, in vol. 3 of his Commentaries, page 36, "It is a general and well-established principle, that when a person joins a partnership as a member, he does not, without a special promise, assume the previous debts of the firm, nor is he bound by them." In reference to this, these facts appear: The firm of D. Cross & Sons was in existence at least as far back as 1871, and engaged in the flouring-mill business. The firm then consisted of D. Cross, S. K. Cross, and Thomas Cross. In the spring of 1872 the firm borrowed $3,500 of the bank, and gave their sixty-day note therefor. The loan was continued by renewals of the note until February 26th 1873, when the note in controversy was given. In the summer of 1872 Thomas Cross went out of the firm; and in the fall of 1872, as claimed, plaintiff in error became a partner. The name of the firm was not changed. Now while an incoming partner does not by the mere fact of joining the firm become liable for its prior debts, yet he may assume such liability, and it is a question of fact whether he did so. And very slight testimony, the books say, will be sufficient to show that he did. Thus, in *Ex parte Jackson*, 1 Vesey Jr. 131, Lord Thurlow said: "If any interest had been paid upon that bond by both, I should have considered it as adopting the debt, and making the partnership liable for it. * * * If

one man, having debts, takes another into partnership with him, a very little matter respecting those debts will make both liable." And in Parsons on Part., § 435: "Whether the new incoming partner has assumed the old debts, is sometimes a difficult question of law and fact. It certainly may be implied by circumstances. And what circumstances should in any one case imply it, is a question partly for the court, and partly for the jury. Paying of interest on a debt, or a knowledge without objection that the new firm pays the interest, would warrant a jury in finding such an assumption of the old debt. And perhaps any single fact of a like kind would have the same effect." See also, Story on Part., §§ 152, 153; *Updike v. Doyle*, 7 R. Island, 447; *Ex parte Peele*, 6 Vesey Jr. 601; *Ex parte Williams*, Buck, 16; *Ex parte Freeman*, Buck, 474. And there is manifest justice in this. Where one joins a partnership, as in this case, he makes himself a part of an entity already existing, which has acquired certain property and business, and in acquiring it has incurred certain indebtedness. The firm owns the property, holds the business, and owes the debts. He becomes one of that firm. Should it require much evidence to show that in entering that firm he identifies himself fully with it, becomes in all respects a part of it, and shares in its obligations as well as in its property and business? It is true, that as to the other partners, there is a rearrangement of interests. But as to the property and business, it is a continuous thing. When one buys a share in a corporation, he buys an interest subject to debts. And while there is not the same legal obligation in entering a firm, there is much of practical similarity. Applying that rule to this case, we must sustain the judgment. The plaintiff in error knew of the existence of this debt. The interest on it was, without any objection by him, charged up to the firm by the bank, and entered in its pass-book. Thus appears the very matter specified by Parsons as sufficient to warrant a finding of the assumption of the debt. Again, while he did not sign the new note, and was not present when it was signed, he knew that the bank was seeking

a renewal, and made no objection to it. The note was executed in the name of the firm, and was *prima facie* therefore binding on all the members of the firm at the time of its execution. It was a negotiable promissory note, at ninety days. It was such a note, as, so far as anything in the record shows, he would naturally expect a bank to take. For banks, as every one knows, as a rule, ask negotiable paper. Negotiated for value before due, it would be good against all those who were members of the firm at the date of its execution. With this before him, he gives no caution to the bank, and makes no objection to the renewal. After all, there is but a question of fact in regard to the partnership, and the assumption of the partnership debts; and being but a question of fact, it is a matter for the determination of the trial tribunal. And as there was ample testimony to sustain its finding, we must affirm it, although the testimony of the two Crosses is plain, direct and positive against it.

The judgment will be affirmed.

All the Justices concurring.